## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| *In re: Brinker Data Incident Litigation* | Case No.:  18-cv-00686-TJC-MCR |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiffs, Shenika Theus, Michael Franklin, and Eric Steinmetz ("Plaintiffs") hereby move for certification of the following class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) or in the alternative, for certification of an issue class under rule 23(c)(4):

> All persons residing in the United States who made a credit or debit card purchase at any affected Chili's location during the period of the Data Breach (the "Nationwide Class").

Plaintiffs additionally request a separate statewide class for the consumer protection claims brought under California law, defined as follows:

> All persons residing in California who made a credit or debit card purchase at any affected Chili's location during the period of the Data Breach (the "California Statewide Class").

Pursuant to Fed. R. Civ. P. Rule 23(a) and (g), Plaintiffs further move for an order appointing Shenika Theus, Michael Franklin, and Eric Steinmetz as Class Representatives and appointing Federman & Sherwood, Morgan & Morgan Complex Litigation Group, and Kasdan LippSmith Weber Turner LLP as Class Counsel in this action.

## I.    INTRODUCTION

On May 12, 2018, Brinker International, Inc. ("Brinker" or "Defendant") acknowledged

that customers who used payment cards for transactions at certain corporate-owned Chili's restaurants located throughout the United States from March through April 2018 had their payment card data and other personal information exposed to and accessed by cyber-criminals (the "Data Breach" or the "Breach"). This Breach was the result of Brinker's failure to implement adequate data security measures. As a result of deficient security protocols and practices, Class Members' data was at heightened risk of being, or has been, stolen by persons who gained unauthorized access to Brinker's systems. The named Plaintiffs and absent Class members were injured by Brinker's failure to secure payment card data ("PCD") and personally identifiable information ("PII") of its customers, and Brinker's inadequate data security practices are at the root of each of Plaintiffs' claims. Plaintiffs bring this class action case against Defendant for its failure to (i) secure and safeguard customers' credit and debit card numbers and other PCD, (ii) secure PII that Brinker collected at the time Plaintiffs made purchases at Chili's restaurants owned and operated by Brinker, and (iii) provide timely, accurate and adequate notice to Plaintiffs and other Class Members that their PCD and PII (hereinafter collectively referred to as "Customer Data") had been stolen and what information was included in the stolen Customer Data.

This case is naturally suited for resolution on a class-wide basis. Questions common to the putative class include whether and to what extent Brinker had an obligation to secure its customers' data and whether it failed to meet those obligations. Such common issues will satisfy predominance on all claims through trial because Brinker's data security practices uniformly apply to all Class members. Class certification is further supported by the fact that the costs for individuals to litigate their claims, which stem from a highly technical Data Breach, would far surpass the individual damages to be recovered.

As set forth herein, Plaintiffs respectfully move for an order certifying the proposed classes

2

pursuant to Rules 23(a) and (b)(3), or alternatively (c)(4), of the Federal Rules of Civil Procedure, appointing Shenika Theus, Michael Franklin, and Eric Steinmetz as Class Representatives, and the law firms of Federman & Sherwood, Morgan & Morgan Complex Litigation Group, and Kasdan LippSmith Weber Turner LLP as Class Counsel.

## II.    SUMMARY OF FACTS DEVELOPED THROUGH DISCOVERY

On May 12, 2018, Brinker acknowledged publicly for the first time that customers who used payment cards for transactions at certain corporate-owned Chili's restaurants located throughout the United States from March through April 2018 had their Customer Data stolen in the Data Breach.  Brinker stated that "malware was used to gather payment card information including credit or debit card numbers as well as cardholder names from our payment-related systems for in-restaurant purchases at certain Chili's restaurants."[1] Thus, private Customer Data was compromised due to Brinker's acts and omissions, namely its failure to properly secure its data system, protect against the intrusion of malware, and protect the Customer Data.

That the restaurant industry is an attractive target of cyber criminals and the susceptibility of data systems to malware is well-known throughout the restaurant industry.  In the last five years, practically every major data breach involving retail stores or restaurant chains has been the result of malware.  Accordingly, many retailers, restaurant chains, and other companies have responded to the increasing risk of a data breach by adopting technology that helps make data systems more secure. Brinker, on the other hand, shirked these industry standard technologies by, among other things, failing to expend the resources necessary to secure its systems.

Brinker disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data

---

[1] *See* Brinker International News Releases, *Notice of Unauthorized Access to Chili's Grill & Bar Guest Data*, available at http://brinker.mediaroom.com/ChilisDataIncident (last visited May 16, 2018).

systems were protected, failing to disclose to its customers the material fact that it did not have adequate computer systems and security practices to safeguard Customer Data, and failing to monitor for and timely detect the Data Breach.  Indeed, the deficiencies in Brinker's data security, including insufficient firewall configuration,[2] were so significant that the malware installed by the hackers remained undetected and intact in Brinker's systems for more than three months[3] and was only detected after Chili's restaurant managers started making frequent calls complaining of the degradation of services from their back-office computers.[4]

The story of this Breach is one of flagrant inattention to data security and a duty to protect Customer Data.  As detailed in the attached Declaration of Sailaja Kotra-Turner, Brinker's former Director of Information Security, Brinker turned a blind eye to data security by performing bare minimum testing that did not fully assess whether it could keep Customer Data secure.[5] When Brinker finally conducted the first full penetration testing of its systems in November 2017, it was alerted to significant gaps and vulnerabilities in its data security.[6] Unfortunately for Plaintiffs and Class Members, cyber criminals took advantage of Brinker's callous and deliberate decisions and infiltrated Brinker's back office systems using the precise gaps to which Brinker had been alerted before Brinker could begin to remediate the problems.[7]  For Plaintiffs and Class Members, it was too little, too late, and as a result, their Customer Data has been exposed and found for sale on the dark web.[8]

---

[2] Exhibit B filed herewith, Declaration of Jean Sutton Martin ("Martin Dec."), filed herewith, Ex. 1, August 2017 Trustwave PFI Report, at BRINKER00090304, BRINKER00090310, BRINKER00090318 ("Trustwave Report") (disputed by Brinker Corporate Representative Pankaj Patra in June 9, 2020 Deposition, Ex. 2 at pp. 152-53).
[3] Exhibit C, filed herewith, Declaration of Sailaja Kotra-Turner ("Kotra-Turner Dec."), ¶ 7.
[4] Martin Dec., Ex. 2, June 9, 2020 Deposition of Pankaj Patra, pp. 90-91.
[5] Kotra-Turner Dec., filed herewith, ¶ 4.
[6] *Id*. ¶ 5.
[7] *Id*. ¶ 7.
[8] Trustwave Report, at BRINKER00090282.

### III.    ARGUMENT

"The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 679 (S.D. Fla. 2011). "The Supreme Court has long recognized that where, as here, 'it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.'" *Id.* (quoting *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980)).

The Eleventh Circuit has explained that "class certification decisions require the application of broad and flexible legal standards to unique and complex sets of facts that do not fit squarely within prior precedent," and district courts, therefore, have broad discretion to certify a class. *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1275 (11th Cir. 2000); *see also Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) ("The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23."). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

### A.    THE NAMED PLAINTIFFS HAVE STANDING

The first step in the examination of class certification begins with a determination of constitutional standing. *Prado-Steiman,* 221 F.3d at at 1280; *Burtulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001) ("Standing is an inherent prerequisite to the class certification inquiry…"). A plaintiff must show that she is "part of the class" and that she

"personally suffered" the "same injury" as others in the class. *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006) (quoting *Prado-Steiman*, 221 F.3d at 1279); *see also Ford v. United States Steel Corp.*, 638 F.2d 753, 761 n.22 (5th Cir. 1981) ("The basic holding in Rodriguez that 'a class representative must be part of the class and possess the same injury as the class members' is still good law.") (internal quotation and citation omitted), citing *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). Plaintiffs have demonstrated their standing in their response to Brinker's motions to dismiss.  *See* Dkt. No. 53; Dkt. No. 65 at 8-14.  Indeed, this Court has held that Plaintiffs "have sufficiently alleged a concrete actual injury and therefore have standing." Dkt. No. 65 at 14.

## B.   THE PROPOSED CLASS IS ADEQUATELY DEFINED AND ASCERTAINABLE

"Before establishing the explicit requirements of Rule 23(a), a plaintiff must first establish that the proposed Class is 'adequately defined and clearly ascertainable.'" *Randolph v. J.M. Smucker, Co.*, 303 F.R.D. 679, 684 (S.D. Fla. 2014); *see also Morrow v. Washington*, 277 F.R.D. 172, 187 (E.D. Tex. 2011). This requirement asks (i) whether members of the proposed class "can be ascertained by reference to objective material," and (ii) whether analysis of that objective criteria is "administratively feasible," such that "identifying class members [would be] a manageable process that does not require much, if any, individual inquiry." *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014); *Karhu v. Vital Pharms., Inc.*, 621 Fed. Appx. 945, 947 (11th Cir. 2015); *see also Morrow*, 277 F.R.D. at 187.

The Class definitions use only objective criteria – limiting the class to those residing in the United States, or in the state of California, who made a credit or debit card purchase at any affected Chili's location during the Data Breach period. Furthermore, identifying Class Members would be administratively feasible because the Data Breach time period is known, and there are records of

the credit and debit card transactions made during the time of the Data Breach.[9] The process of identifying cardholders who made purchases during a specific time frame would be manageable and void of any individual inquiry. The proposed Class is, therefore, "adequately defined" and "clearly ascertainable."

### C.      THE PROPOSED CLASS SATISFIES RULE 23(a)

Where, as here, each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) have been satisfied, class certification is appropriate. Rule 23(a) requires: (i) that the proposed class is so numerous that joinder is impracticable (numerosity); (ii) common questions of law and fact among the class members (commonality); (iii) that the named representatives' claims are typical of those of the class (typicality); and (iv) that both the named representatives and their counsel possess the ability to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23; *see also Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1189-90 (11th Cir. 2009). Rule 23 does not grant any authority for a court to consider the merits of a plaintiff's claims while it decides class certification. *Eisen*, 417 U.S. at 177. A court should only consider "the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Babineau*, 576 F.3d at 1190; *see also In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1051 (E.D. Tex. 2012). Indeed, courts are required to analyze the allegations of the complaint and any evidence submitted by the parties with a presumption in favor of class certification. *Babineau*, 576 F.3d 1190.

### 1.      The Class Meets Rule 23(a)(1)'s Numerosity Requirement

"The Eleventh Circuit has held that the numerosity requirement of Rule 23 demands that the court determine whether the class is so numerous that joinder of all members is impracticable."

---

[9] *See*, *e.g.*, *id.*, Ex. 3 at FISV-Brinker0000989.

*Petersen v. Am. Gen. Life Ins. Co.*, No. 3:14-CV-100-J-39JBT, 2016 WL 7365187, at \*5 (M.D. Fla. Mar. 30, 2016) (citations and internal quotation marks omitted). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). While the Eleventh Circuit has not established a fixed number of class members to satisfy the Rule 23 numerosity requirement, it has affirmed certification of a class of "at least thirty-one individual class members," *Kilgo v. Bowman Transportation, Inc.*, 789 F.2d 859, 878 (11th Cir. 1986), and has explained that "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ( "100 to 150 members – is within the range that generally satisfies the numerosity requirement.").

According to documents produced by Brinker and its forensic investigator for the Data Breach, data was stolen from at least 929 Chili's Grill and Bar locations throughout the United States, affecting approximately 4.5 million payment cards.[10] Considering the millions of customers that visited these locations from March through April 2018,[11] numerosity is plainly satisfied.

## 2. The Class Meets Rule 23(a)(2)'s Commonality Requirement

Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue

---

[10] *See id.*, Ex. 3 at FISV-Brinker0001064-65 (discussing compromised payments cards as being in the 4.5 million range); FISV-Brinker0000989 (breaking down the number of exposed credit cards by credit card brand to total more than 3.9 million credit cards) Ex. 4 at BRINKER00000382 (listing affected Chili's restaurants).

[11] *See id.*, Ex. 5, 2017 Brinker International, Inc. SEC Form 10-K Annual Report, p. 6, stating, "More than 50 million Americans visit Chili's every three months…"

that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350 (citation omitted). The commonality requirement presents a low hurdle; it does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013); *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1052. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Sharf v. Financial Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (internal citations omitted); *Dukes*, 564 U.S. at 359; *see also Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009); *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1052-53.

Here, commonality is satisfied because Plaintiffs' and the Class' claims depend on common questions that require common answers.  Each of the claims Plaintiffs seek to litigate turn on the question of whether Brinker's security practices were adequate to protect the Customer Data of Plaintiffs and Class members.  This will involve an examination of related questions that are common across the class, including the following:

1) Whether Brinker had a duty to protect Customer Data;

2) Whether Brinker knew or should have known its data systems were susceptible to a data breach;

3) Whether Brinker's security measures to protect its data systems were reasonable in light of the PCI DSS requirements, FTC data security recommendations, and best practices known throughout the industry and recommended by data security experts;

4) Whether Brinker was negligent in failing to implement reasonable and adequate security procedures and practices for its data network;

5) Whether Brinker's failure to implement adequate data security measures allowed the breach of its data systems to occur;

6) Whether Brinker's conduct constituted unlawful, unfair or fraudulent business acts and practices under the UCL;

7) Whether Brinker's conduct, including its failure to act, resulted in or was the

proximate cause of the breach of its systems, resulting in the loss of the Customer Data of Plaintiffs and Class Members;

8)   Whether Plaintiffs and Class Members were injured and suffered damages or other losses because of Brinker's failure to reasonably protect its data systems and network; and

9)   Whether Plaintiffs and Class Members are entitled to relief.

Because common issues, including the adequacy of Brinker's systems in reasonably safeguarding customers' data, underlie all Class Members' claims, and because Brinker's course of conduct caused all Class Members to be harmed, the commonality requirement is satisfied. For one, Plaintiffs' negligence claims are based on Brinker's failure to secure customer data and will turn factually on the question of whether Brinker owed a duty to consumers with respect to securing payment card data, the actions Brinker did or did not take to secure Consumer Data, and whether that conduct (or lack thereof) enabled the Data Breach to occur. In addition, Plaintiffs' breach of implied contract claims will involve common issues of law and fact regarding whether Plaintiffs' and Class Members' purchases at Chili's resulted in an implied contract under which Brinker agreed to safeguard and protect Customer Data from unauthorized disclosure or uses and to timely and accurately notify Plaintiffs and Class Members when their data had been compromised, and whether Brinker breached that implied contract.

The trial of this case will focus on Brinker's conduct and policies, which affected the Class as a whole.  Brinker's failure to implement adequate security measures for its data systems negatively impacted all Class Members, and evidence pertaining to the adequacy of Brinker's data security systems is, therefore, common to all Class Members.  Indeed, common answers to the issues of whether Brinker was obligated to protect the security of its customers' payment card information and, if so, whether the security measures Brinker took were adequate will drive the resolution of the case.  Accordingly, Plaintiffs and the proposed Class easily meet the low-threshold

requirements of commonality.

### 3. Plaintiffs' Claims Meet Rule 23(a)(3)'s Typicality Requirement

"The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996). Typicality "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3); *see also In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1054. A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1054 (finding typicality where "the state-law claims that the Consumer Plaintiffs assert in this case—negligence, breach of contract, and violations of state consumer-protection laws—are recognized in some form in all jurisdictions and therefore available for all [class members.] . . . Despite possible state-by-state variations in the elements of these claims, they arise from a single course of conduct by [defendant] and a single set of legal theories.") (citations and internal quotation omitted). Where the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, Brinker's conduct failed in securing its data systems, resulting in a Data Breach that compromised the Customer Data of Plaintiffs and Class Members, victimizing each in the same manner by the same conduct. More specifically, Plaintiffs and Class Members were victims of the same Data Breach because of the same security gaps and vulnerabilities on the same Brinker data systems, allowing the same malware to compromise their Customer Data. If Brinker owed a duty to protect the Customer Data it collected, then its duty is as to the entire Class, and common

evidence that Brinker's inadequate security protocols and procedures created ripe conditions for the Data Breach will show Brinker's breach of that duty to the entire Class. In addition, Plaintiffs and Class Members experienced the same harm of having their Customer Data exposed to fraudulent use and suffered damages typical to the Class, including loss of use of payment cards, having to cancel or replace payment cards, resolving any fraudulent charges, and monitoring credit for fraudulent use.

As the court in *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) reasoned:

> Plaintiffs assert that the typicality requirement is met because all class members had their private information compromised, and their claims arise from the same course of uniform conduct of [defendant]. The Court agrees that this requirement is met. The proposed class members were all in a position whereby [defendant] may have negligently handled their private information. Thus, there is a sufficient relationship between the injuries to the Representative Class Members and the conduct which affects the entire class.

*Id.* at *3. Typicality is similarly satisfied here.

### 4. Plaintiffs Meet Rule 23(a)(4)'s Adequacy Of Representation Requirement

The adequacy of representation requirement is met when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citation and internal quotation marks omitted); *see also In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1055-56. Both are satisfied here.

Rule 23(a)(4) demands that a class representative "possess the same interest and suffer the same injury as the class members." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S.

395, 403 (1977). Thus, adequacy of representation tends to merge with commonality and typicality in that each of these inquiries examine "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

As demonstrated above, Plaintiffs' claims are common and typical of the class. Plaintiffs' and the Class's claims stem from a single course of conduct by Brinker, are based upon the same legal theories, and seek to recover similar damages for Brinker's harmful conduct.  There is no respect in which Plaintiffs' claims or interests are antagonistic to or in conflict with those of the Class. To the contrary, Plaintiffs' success in proving their claims will benefit the Class because their interests are directly aligned with the Class' interests. In addition, the proposed Class Representatives are committed to seeking redress for the allegations contained in the Complaint on behalf of the entire Class. Plaintiffs have actively participated in the litigation of this matter, conferring on numerous occasions with counsel, responding to discovery requests, reviewing and commenting on court filings, producing documents, and appearing for their depositions. At this stage of the litigation, there should be no reason to doubt that Plaintiffs are adequate representatives for the Class and will continue protecting Class members' interests at trial. *See In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (PAM), 2017 WL 2178306, at *7 (D. Minn. May 17, 2017) (finding adequacy in a data breach case: "This class suffered the same injury— theft of personal financial information—and the same risk of future injury. The only difference among class members is in the quantifiable damages suffered, not in the underlying injury.") *aff'd*, 892 F.3d 968 (8th Cir. 2018); *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1057 (finding class representatives sufficiently adequate absent intraclass conflicts and given the nature of the data breach case despite lack of evidence of their involvement in the litigation).

Plaintiffs' counsel, the law firms of Federman & Sherwood, Morgan & Morgan Complex Litigation Group, and Kasdan LippSmith Weber Turner LLP (collectively, "Proposed Class Counsel"), have extensive experience prosecuting class actions and other complex litigation. *See* Exhibit A, attached hereto. Moreover, Proposed Class Counsel have demonstrated their willingness to prosecute this litigation vigorously through their investigating the subject claims, drafting the consolidated complaints, opposing Defendant's multiple motions to dismiss, conducting significant discovery, including depositions, hiring experts, expending substantial resources, and preparing and filing this Motion for Class Certification. For these reasons, Plaintiffs satisfy the adequacy requirement, and upon certifying the Class, the Court should appoint Federman & Sherwood, Morgan & Morgan Complex Litigation Group, and Kasdan LippSmith Weber Turner LLP as Class Counsel pursuant to Rule 23(g).

### D.       THE CLASS SATISFIES RULE 23(b)(3)

Where certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues, and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 615–16 (1997). Both requirements are met, here.

When considering the element of predominance, "[i]t is not necessary that all questions of fact or law be common, but only that *some* questions are common and that they predominate over individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241 at 1254 (11th Cir. 2004) (emphasis added); *see also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). The inquiry into "whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004); *see Dukes*, 131 S.

Ct. at 2551-57. Thus, "[c]ommon issues of fact and law" predominate if they "ha[ve] a direct impact on every class member's effort to establish liability ..." *Klay*, 382 F.3d at 1255.

The predominance inquiry "begins, of course with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.,* 131 S. Ct. 2179, 2184 (2011). Plaintiffs are not required to prove every element of their claims is susceptible to class-wide proof. *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013). Rather, the Court should assess each element and determine whether those issues that are subject to "generalized proof" predominate over those issues that are subject only to individualized proof. *Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000).

### 1.    The Claims Of The Class Have Common Answers

The most important liability questions in this case have common answers. What matters for purposes of class certification is not whether this Court or a jury will ultimately agree that Brinker's security measures were inadequate, but whether all Class members' claims will rise or fall together. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).  The answer to that is yes: either Brinker's security measures were adequate or they were not; either Brinker owed a duty—whether in tort or as a result of an implied contract—to provide adequate payment card security, or it did not; either Brinker failed and/or breached that duty, or it did not.

Both the existence of the implied contract and the breach of that implied contract are factors that can be determined on a class-wide basis, without recourse to individual evidence. The implied contract is one between Defendant and all customers who provided Chili's with a payment card, and the breach occurred in connection with the company-level failures that led to the Data Breach. *Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *12 (M.D. Ala. Mar. 17, 2017) ("[B]ecause the relationship and disclosure elements are the key points of

contention, resolution of the common elements will so advance the litigation that they may fairly be said to predominate. The implied-contract claim therefore passes the predominance criterion.") (internal citations and quotations omitted) (Predominance finding affirmed on reconsideration, *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 WL 3816722, at *1 (M.D. Ala. Aug. 31, 2017)).

Similarly, to recover on their negligence claim, Plaintiffs and Class members must establish Brinker had a duty to protect its customers' payment card data and breached that duty. Duty and breach are common issues susceptible to proof on a class-wide basis. The main issue in this case boils down to the common factual contention of whether Brinker's data security levels were reasonable. Plaintiffs' negligence claims in this data breach case would not get bogged down in the individualized causation issues that sometimes plague negligence claims arising in products-defect cases. Those cases often cannot clear the predominance hurdle because "[n]o single happening or accident occurs to cause similar types of physical harm or property damage." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1231 (9th Cir. 1996). Here, by contrast, the same actions (security vulnerabilities) by a single actor (Defendant) caused the same injury to all Class Members (compromise of Customer Data).

Numerous courts that have held that certification of a negligence claim is appropriate where, as here, the negligent act and resulting damages arise from a common set of operative facts. *See, e.g., Mullen v. Treasure Chest Casino*, 186 F.3d 620, 626 (5th Cir. 1999) (affirming decision where "district court held that the issues to be tried commonly—seamen status, vessel status, negligence, and seaworthiness—were significant in relation to the individual issues of causation, damages, and contributory negligence"); *In re: Tri-State Crematory Litigation*, 215 F.R.D. 660, 694-97 (N.D. Ga. 2003) (granting issue certification in a negligence class action). A negligence

claim in a data breach action like this one is particularly suited to certification. *See Smith*, 2017 U.S. Dist. LEXIS 38574, at *37 ("The questions of duty and breach—like the questions of the existence and breach of a contract—are common issues susceptible to proof on a class-wide basis.").

Questions of liability are also subject to common proof that will be presented on behalf of the Class as a whole, and that common proof will predominate over any individualized proof. Plaintiffs will rely upon common, class-wide evidence to establish each element of their claims against Brinker for breach of implied contract, negligence, and the California Unfair Competition Law (Section III.C.2 (regarding commonality), *supra*), focusing on Defendant's failures in securing its data systems as opposed to matters pertaining to individual Class Members. *See, e.g., In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 3:03-MDL-1556, 2007 WL 4150666, at *12 (M.D. Pa. Nov. 19, 2007) ("'[c]ommon issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members") (citation omitted). Thus, common issues predominate. *See, e.g., In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015) ("Here, the common factual and legal questions presented are: (a) whether [defendant] failed to protect its users' PII with industry-standard protocols and technologies; (b) whether the allegedly false promises [defendant] made in its privacy policies are material; and (c) whether the security representations contained in [defendant's] privacy policy, in light of the actual state of [defendant's] security practices, constitute a violation of the UCL. . . . These common questions can be resolved for all members of the proposed class in a single adjudication and are the central focus of this class action. Accordingly, the Court finds the predominance requirement satisfied."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *6 ("Whether [defendant's] conduct (before and during the theft of Plaintiffs' private

information) violated the various laws alleged in the Complaints is a question that is common to all class members. The proof required focuses on Defendant's conduct, not on the conduct of individual class members. Without a determination on this common question, there would be no recovery for any of the class members . . . Although there are variations in the damages claims of each class member and their appropriate amounts of recovery, these issues are predominated by the main issue of fault.").

Further, common evidence will establish that Defendant's conduct exposed Class Members' Customer Data to unauthorized third parties. Class Members paid for their Chili's purchases using a payment card at a Chili's location affected by the Data Breach, that payment card data was retained in Brinker's back office systems, which were particularly vulnerable because of Brinker's critical security gaps and Brinker's lack of tools to prevent or detect such attacks to its systems, and the payment card data retained on Brinker's systems was accessed by a third party.[12] This generalized proof will establish that Plaintiffs and Class Members suffered harm because of Defendant's conduct.

Moreover, Plaintiffs will be able to prove damages for all Class members using common evidence and common damages formulae—further demonstrating that common issues predominate throughout this case.[13] As will be discussed further below, the report of Daniel J. Korczyk supports the commonality of the harms that Class Members have suffered and the methodology by which damages can be calculated.  Any individualized issues going to causation are minimal in comparison to the common questions that stretch across the Class

### 2.     Choice Of Law Issues Do Not Preclude Class Certification

While "[i]t is well-established that consideration of choice of law issues at the class

---

[12] *See* Kotra-Turner Dec. ¶¶ 3-5, 7.
[13] *See* Declaration of Daniel J. Korczyk ("Korczyk Dec.") filed herewith.

certification stage is generally premature[,]" *Singer v. AT&T Corp.*, 185 F.R.D. 681, 691 (S.D. Fla. 1998) (citation omitted), even were the Court to consider choice of law issues, it would not change the conclusion that the Class should be certified. In *Singer*, the court rejected the defendant's arguments that differing state law claims precluded certification of a nationwide class, confirming that the cited case law holds only that a court cannot automatically apply forum state law "if it materially conflicts with the law of another state *and* there is no apparent connection to the forum state." *Id.* at 691-92 (emphasis added). Here, Brinker conducts business throughout the forum state of Florida; indeed, Florida is the state with the second largest number of Chili's restaurants that were compromised in the Data Breach.[14]  Moreover, the law of the forum state does not materially differ from that of other states with respect to Plaintiffs' claims.  *See* Exhibits B and C.

The two key issues in a breach of implied contract claim—whether an implied contract exists and whether that contract was breached—is the same regardless of state.  *See* Exhibit B, attached hereto; *see also Singer, at* 692 (holding that contract claims "are universally recognized causes of action that are materially the same throughout the United States," citing *American Airlines v. Woleus*, 513 U.S. 219 (1995)).  Likewise, the elements of proof for a negligence claim are the same regardless of state.  *See* Exhibit C; *see also* Restatement (Second) of Torts § 281 (1965) (explaining that a claim of negligence requires a duty of care, breach, causation, and damages).  This case does not implicate any of the state-specific issues that can sometimes creep into the negligence analysis.  First, the data was entirely outside of Class Members' control so there can be no claim of contributory negligence.  Second, the economic loss doctrine does not apply to Plaintiffs' claims.  *See* Exhibit C.  Thus, the variations in state laws will "not preclude

---

[14] Martin Dec., Ex. 3 at FISV-Brinker0002350.

class treatment" here because "there are no material differences that would affect" a finding of liability.  *Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 694 and n.13 (N.D. Ga. 1983); *see, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 315 (3d Cir. 1998) (affirming district court's holding that "choice of law issues [did] not render this class action unmanageable" and emphasizing that the "elements of these common law claims [including breach of contract and negligence claims] are substantially similar and any differences fall into a limited number of predictable patterns.");  *Jones v. Depuy Synthes Prod., Inc.*, 330 F.R.D. 298, 314 (N.D. Ala. 2018) (rejecting defendants' argument that "variations in state law [including negligence law] would make it impossible for Plaintiffs to meet the class certification requirements"); *In re Checking Account Overdraft Litig.,* 307 F.R.D. 630, 647 (S.D. Fla. 2015) ("There is general agreement among courts that the 'minor variations ... under the laws of the various states ... are not material and do not create an actual conflict,'" and will present "'no obstacle to class certification.'") (citation omitted).

Here, just as the *Singer* court concluded, "the potential application of varying state laws does not preclude class certification at this juncture." *Id*. at 692.

### 3.     UCL Claims Are Subject To Common Proof

Plaintiffs request that the Court certify a California Subclass based upon Defendant's violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et. seq.*  Though the UCL requires plaintiffs to prove members of the public are likely to be deceived by the defendant's business practices, Plaintiffs' burden of proof is modest. *Friedman v. AARP*, 855 F.3d 1047, 1055 (9th Cir. 2017).  It is subject only to an objective "'reasonable consumer standard.'" *Id*. This standard does not implicate individual issues specific to each consumer. *Lilly v. Jamba Juice Co*., 308 F.R.D. 231, 242 (N.D. Cal. 2014); *see Kumar v. Salov N. Am. Corp.*, 2016

WL 3844334, at *7 n.9 (N.D. Cal. 2016)("Claims under the UCL . . . do not require[] individualized proof of reliance, deception, or causation).

Hypothetically different individual consumer motivations do not defeat certification of the UCL claims. On those claims, an inference of reliance arises as to the entire class if the Plaintiffs relied. *See Brickman v. Fitbit, Inc.,* No. 3:15-CV-02077-JD, 2017 WL 5569827, at *5-6 (N.D. Cal. Nov. 20, 2017) (Certifying a California class under the UCL and for negligent misrepresentation and fraud because the question of whether defendant's marketing was deceptive "is well-suited for an answer in 'one stroke' across the class," and "individual reliance is not required for the California UCL…"); *Delarosa v. Boiron, Inc.,* 275 F.R.D. 582, 594 (C.D. Cal. 2011) ("A determination by the trier of fact that Coldcalm misrepresented its efficacy to Plaintiff will also resolve the common question of whether Coldcalm misrepresented its efficacy to all California consumers of Coldcalm").

### 4.     Individual Damages Do Not Defeat Predominance

As demonstrated above, Plaintiffs' claims present several common questions all tied to the same harmful conduct by Brinker, dwarfing any individual questions and amply satisfying the predominance inquiry.  Further, individualized issues do not defeat predominance where common issues are at the crux of the action to be certified. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000).

Moreover, Plaintiffs will use common proof to establish that Class Members suffered these injuries as a result of Defendant's conduct and common methodologies to calculate the amount of those losses. Here, Plaintiffs' expert, Dan Korczyk, explains that damages can be calculated on a class-wide basis using a damages methodology that is directly related to Plaintiffs' theories of

liability.[15]

Even if damages must be calculated individually, that "is no impediment to class certification." *Klay*, 382 F.3d at 1260; *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ("Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal"); *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 306 (3d Cir. 2005) (citation omitted) ("[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individual damage issues.'").

Because "the predominating questions concerning liability will [not] be overwhelmed by intensive, individualized damages determinations," class treatment is appropriate. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016); *see also Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1240 (11th Cir. 2016) (holding that common questions predominate when individual damage questions will not overwhelm the litigation). Accordingly, class certification is proper.

### 5.        Superiority Favors Certifying The Classes

Courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)); *see also Corley v. Entergy Corp.*, 220 F.R.D. 478, 489 (E.D. Tex. 2004). The Court must consider (a) the class members' interests in individually controlling

---

[15] Korczyk Dec. ¶¶ 5-48.

the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3).   "The predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims, both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability." *Kron v. Grand Bahama Cruise Line, LLC,* 328 F.R.D. 694, 702 (S.D. Fla. 2018) (citation and internal quotation marks omitted); *see also Cleven v. Mid-America Apt. Cmtys., Inc.*, 328 F.R.D. 452, 465 (W.D. Tex. 2018).

Here, class treatment of the predominating common questions of law and fact is superior to multiple, individual actions because it would be the most efficient adjudication of Plaintiffs' and the Class Members' claims and conserve costs. The relatively small amount of damages that Class Members have suffered on an individual basis would not justify the prosecuting separate lawsuits. Moreover, the prosecuting individual Class Members' actions would create a risk of inconsistent and varying outcomes for lawsuits based on the same conduct and the same Data Breach.

Counsel in this action are not aware of any other earlier litigation against Defendant Brinker to which any other Class Members are parties and in which any question of law or fact controverted in this action is being adjudicated. Plaintiffs also know of no difficulty to be encountered in the management of this action that would preclude maintaining it as a class action.

## IV.   ALTERNATIVELY, RULE 23(c)(4) ISSUE CERTIFICATION IS APPROPRIATE

Should the Court determine the individualized issues going to causation or damages overwhelms common questions such that a Rule 23(b)(3) class is inappropriate, Plaintiffs' request that the Court certify the issues listed in Section III.C.2 under Rule 23(c)(4).

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." *Hirsch v. Jupiter Golf Club LLC*, No. 13-80456-CIV, 2015 U.S. Dist. LEXIS 62719, at *5 (S.D. Fla. May 12, 2015); *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 317 (S.D. Fla. 2001).   Specifically, the Court may certify issues under Rule 23(c)(4) if it materially advances the litigation as a whole, with the focus being "judicial economy and efficiency." *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 193 (N.D. Cal. 2015).

Rule 23(c)(4) can be used to certify specific questions, even where the case as a whole does not otherwise satisfy Rule 23(b)(3) predominance. *See, e.g.*, *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 696–97 (N.D. Ga. 2003) (court concluded that "certain negligence issues are appropriate for class treatment"); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues.").

The questions of the duty owed by Brinker to the Class and the adequacy of Brinker's data security systems, which are common to every member of the Class, fit squarely within this analysis.   The answers to these questions will be the same for every class member, making issue certification under Rule 23(c)(4) appropriate.

24

## V.     CONCLUSION

Based on the above, Plaintiffs have established all of the prerequisites for class certification under Rule 23(a), and Rule 23(b)(3) for damages, and alternatively Rule 23(c)(4) for issue certification. Therefore, Plaintiffs respectfully request that the Court enter an Order granting their Motion for Class Certification, certifying this case as a class action pursuant to Rules 23(a) and 23(b)(3).  Alternatively, Plaintiffs respectfully request that the Court enter an Order certifying common issues under Rule 23(c)(4).  Plaintiffs further request that this Court appoint Plaintiffs as Class Representatives and appoint Federman & Sherwood, Morgan & Morgan Complex Litigation Group, and Kasdan LippSmith Weber Turner LLP as Class Counsel.

Date: August 31, 2020

*s/ Jean Sutton Martin*
Jean Sutton Martin
**Morgan & Morgan**
**Complex Litigation Group**
2018 Eastwood Road, Suite 225
Wilmington, North Carolina 28403
Telephone: (813) 559-4908
Facsimile: (813) 222-4795
jeanmartin@ForThePeople.com

William B. Federman
**Federman & Sherwood**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone:  (405) 235-1560
Facsimile:   (405) 239-2112
wbf@federmanlaw.com

Graham B. Lippsmith
**Kasdan LippSmith Weber Turner**
360 East 2nd Street, Suite 300
Los Angeles, CA 90012
Telephone: (213) 254-4800
Facsimile: (213) 254-4801
glippsmith@klwtlaw.com

*Attorneys for the Plaintiffs and*
*the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2020 I caused **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** to be served via the Court's CM/ECF system, which will automatically send notice of such filing to all attorneys of record.

_s/Jean Sutton Martin_
Jean Sutton Martin