UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA |
JACKSONVILLE DIVISION

*In re: Brinker Data Incident Litigation*

Case No.: 18-cv-00686-TJC-MCR

**Class Action**

**Jury Trial Demanded**

## DECLARATION OF SAILAJA KOTRA-TURNER

I, Sailaja Kotra-Turner declare under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

1. I am the former Senior Director of Information Security at Brinker International, Inc., the defendant in this matter.

2. I was hired by Brinker in April 2017 as its Director of Information Security and Risk Management.

3. At the time of my hire, Brinker agents indicated that data security at Brinker was "stable." However, an informal risk assessment done by me noted gaps in data security, and a penetration test conducted in November 2017 confirmed that Brinker's data security had gaps.

4. In my opinion, Brinker's approach to data security at that time was "check the box compliance," meaning that Brinker was focused on doing what was needed for compliance, rather than implementing holistic security measures to fully protect its systems and the data on those systems. For example, prior to my arrival, Brinker conducted penetration testing annually on its cardholder data environment, which was a requirement for Payment Card Industry ("PCI DSS") compliance. However, Brinker did not routinely conduct penetration testing on its overall data systems, or remediate gaps found in non-PCI in-scope systems.

5. I was determined to change Brinker's "check the box compliance" approach to one that addressed security in its entire systems, because, in my opinion, compliance with PCI only measured Brinker's security on a narrow aspect of its network at a particular point in time rather than Brinker's broader security over its entire network over time. I felt my job responsibilities entailed ensuring that all of Brinker's data systems were as secure as possible for every day operation. As a result, I insisted that Brinker conduct a full

1

penetration test in November 2017. This was the first assessment of Brinker's full network. Unfortunately, this full system assessment showed vulnerabilities and gaps in Brinker's systems that its prior testing could not reveal. Also unfortunately, those same vulnerabilities and gaps exposed in the November 2017 penetration testing were exploited in the security breach that I understand is at issue in this lawsuit.

6. The malware that the hackers deployed and that I understand is at issue in this lawsuit had not been previously identified by Microsoft. Therefore, Microsoft neither had nor offered any security patches or updates that would have otherwise prevented the malware attach attack at issue here. Brinker's security incident detection and monitoring systems were not mature enough for early detection and containment of such incidents.

7. In April 2018, we first discovered malware placed on Brinker's restaurant back office systems while attempting to install unrelated non-security software. While investigating system failures connected to this software installation, Brinker's senior systems architect discovered the malware that I understand is at issue in this case. That malware was placed in March 2018 through vulnerable access points that Brinker identified in its November 2017 testing. The initial breach that allowed the hackers access to the back office systems occurred in December 2017. Prior to April 2018, Brinker did not have sufficiently mature detection and monitoring tools, which I identified to be a critical deficiency in the Brinker data security system. During that timeframe, separate projects were underway to remedy the lack of detection/monitoring capabilities, as well as other vulnerabilities exposed in the November 2017 assessment.

As of January 2020, Brinker had new tools to detect data breaches that it had previously lacked, and had plans to install a SIEM in 2Q 2020 (postponed from 3Q 2019 due to budget and resource constraints). Data security professionals understand that early detection of breaches minimize the risk of breaches and resulting damage therefrom. However, in December 2017, when Brinker suffered the malware attack at issue in this case, Brinker did not have the tools to detect, catch, and prevent such attacks. This is why it took us until April 2018 to discover that malware attack, and that while installing unrelated non-security software, rather than by security monitoring systems.

8. Brinker's staffing and budget constraints were in part to blame for Brinker's security vulnerabilities. Prior to my arrival at Brinker, Brinker lost several key IT security employees, including a systems architect shortly after my employment started at Brinker. Due to tight budget controls over IT, Brinker had difficulty finding replacements for the personnel we had lost. We had hired an engineer and an architect in the weeks before the breach was discovered, but they were not yet fully trained or onboarded.

9. Had Brinker used security information and event management ("SIEM") prior to December 2017, SEIM would have prevented the December 2017 security breach. However, due to Brinker's financial and personnel limitations, Brinker lacked SIEM to prevent the breach, and it took my team until April 2018—months from the November 2017 assessment identifying Brinker's critical security gaps—to discover that Brinker's systems were breached in December 2017.

10. My internal team at Brinker, Trustwave, and Optiv all investigated the security breach at issue in this case. I worked with both Trustwave and Optiv for these investigations and

facilitated direct calls and discussions between those two entities so that all three parties (Brinker, Trustwave, and Optiv) shared important information discovered during their investigations. I have reviewed Trustwave's final report on the security incident at issue in this case and do not disagree with of Trustwave's findings in its report.

11. In August 2018, Brinker promoted me to Senior Director of Information Security in August 2018 based upon my work on the data breach at issue in this case, and my efforts in improving the security posture.

Dated August ___31___, 2020

_____
Sailaja Kotra-Turner

3