UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

*In re: Brinker Data Incident Litigation*

Case No.: 18-cv-00686-TJC-MCR

**PLAINTIFFS' REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

There are important facts to remember that Defendants would have the Court gloss over. Hackers first breached Brinker's data systems in December 2017.[1] The forensic investigator, hired by Brinker, determined that the malware placed on Brinker's back office system did "not have exfiltration capabilities" but that the access gained initially, meaning in December 2017, "would have allowed the attacker to exfiltrate the data."[2] As a result, transaction data from corporate-owned Chili's restaurants was "offered for sale on the Joker Stash website, a known marketplace for stolen payment card data."[3] To reiterate, Brinker's own evidence admits that its systems were breached in a way that allowed for exfiltration of customer's data, which ended up for sale on the dark web.

The Brinker Data Breach, caused by Brinker's data security measures, is the common cause of injury for the entire Class. Thus, the issue in this case—the predominate issue, common to the entire class—is whether Brinker's data security was adequate. Plaintiffs' claims present several common questions all tied to the same conduct by Brinker, dwarfing any individual questions and amply satisfying the predominance inquiry.

---

[1] Dkt. 131-3, Declaration of Sailaja Kotra-Turner ("Kotra-Turner Dec."), ¶ 7; Dkt. 131-2, Ex. 1, Trustwave PFI Report at pg.2, BRINKER00090282.
[2] Trustwave PFI Report at pg.2, BRINKER00090282.
[3] *Id*.

In addition to showing that Brinker's liability is subject to common proof, Plaintiffs have also presented a damages model capable of calculating aggregate classwide damages. All that will remain after Brinker's liability and classwide damages are established is the allocation of individualized damages. Almost all of Brinker's injury and causation arguments go to this issue; however, individual allocation of the aggregate classwide damages is premature and it is axiomatic that individualized damages do not defeat class certification, especially when liability may be determined on a classwide basis. More importantly, Defendants completely ignore that Plaintiffs' claims for breach of implied contract entitle Plaintiffs and Class members to nominal damages should they prevail at trial.

At best, the strawman arguments raised by Defendant in its Response, particularly the "constitutional due process" challenges, weigh not against certification of a 23(b)(3) class, but rather in favor of a Rule 23(c)(4) class.

Given the breadth of Defendant's Response and Plaintiff's current space constraints, Plaintiffs in this Reply will address the most glaring mischaracterizations and misinterpretations raised by Defendant in its Response and otherwise stand on the arguments made in Plaintiff's Motion for Class Certification and address any of the Court's concerns in oral argument.

### A. Plaintiffs Have Standing to Pursue this Litigation

This Court previously ruled that unauthorized charges, replacing compromised cards, lost ability to accrue rewards, and time spent disputing fraudulent charges, monitoring accounts, and otherwise addressing or mitigating fraud were sufficient to convey standing in this litigation. Dkt. No. 65, at 14. Plaintiff Theus has overwhelmingly satisfied that showing of standing in this case, which Defendant only disputes based on lack of submitted evidence; however, even with the evidence that Defendant submitted in *opposition* to Plaintiffs' Motion clearly demonstrates

Plaintiff Theus dined at a Chili's during the "at risk" timeframe, experienced financial fraud, incurred out of pocket expenses, and spent time dealing with these fairly traceable issues. Dkt. No. 141-1, Ex. A-17, Sworn Answers 2 (her name and payment card were compromised), 3 (identification of fraud charges on payment card), 4 (date identified May 6, 2018), 5 (identifying six fraudulent charges between May 6, 2018 and May 16, 2018), 6 (identifying the restaurant she visited during the breach timeframe), 8–9, 12 (explaining that the payment card breached in the Data Breach was her primary card and she incurred late charges due to insufficient funds, including a $10 late fee and $35 NSF charge for her electric bill), 11 (testifying that she did not have access to the breached card for 14 days). Moreover, her uncontradicted testimony demonstrates she took proactive steps to protect her payment card from fraud. Dkt. No. 141-1, Ex. A-17, Sworn Answer 16 (describing suspicious actions from cashier and taking proactive steps to replace card).

Similarly, Plaintiffs Steinmetz and Franklin incurred damages in the form of replacing payment cards, lost ability to accrue rewards, and time spent monitoring accounts and otherwise mitigating fraud. Dkt. No. 141-1, Ex. A-11, Sworn Answers 8 (inability to purchase gas), 9–11 (canceling and replacing payment card, time spent communicating with and traveling to bank, and time spent reviewing credit reports); Dkt. No. 141-1, Ex. A-9 (same). Plaintiffs have carried their burden in demonstrating Article III standing, and this Court should similarly so find.

### B. Plaintiffs' Proposed Class Is Properly Defined

Defendant incorrectly contends that Plaintiffs' proposed class definition is improper because it may include consumers who have no injury resulting from the Brinker Data Breach. However, Plaintiffs do not have the burden at the class-certification stage to prove that all or most class members were in fact injured. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, plaintiffs must

show that their claims depend upon a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity *will* resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 564 U.S. at 350 (emphases added). At most, Defendant's contention goes to whether questions of individual damages predominate, not whether the class is adequately defined and clearly ascertainable. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

### C. The Class is Ascertainable

The test for ascertainability is whether the class member "can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Gryhound Park, Inc.*, 562 Fed.App'x. 782, 787 (11th Cir. 2014). There is no requirement that this proof and method be flawless, only that it be *feasible*. *Id.* Defendant conflates an otherwise straightforward and objective, feasible method for identifying class members: 1) the classes are sufficiently defined; 2) Defendant has records of the transactions during the class period to identify class members; and 3) Defendant has records to determine which locations were affected and when. Defendant even admits as much. Opp. at 21–22 (citing PFI Report for proposition that different locations were affected during different periods of time). That one location was affected for one period of time while another location was affected for a different period of time does not implicate "individual" inquiries that would defeat class certification—it in fact checks against overinclusion of those who are not in the classes; put differently, Defendant's records can be used to easily ensure the class is not overinclusive. Despite Defendant's efforts to cast this case as a self-identification case, it is not—*identification* for ascertainability would be through *Defendant's* records. *Cf, Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 685 (S.D. Fla. 2014) (rejecting self-identification procedure in product labeling case where identification through *objective* criteria was impossible due to variation of label). There is no "memory problem" or

determination of whether someone purchased a particular food at Defendant's restaurants—it is simply whether they dined at a restaurant in a period of time with a credit card. *Id.* The class members are readily ascertainable through objective criteria used in an administratively feasible manner, and this Court should reject Defendant's meager argument to the contrary.

### D. Common Issues Predominate over any Individualized Issues

#### 1. Common issues predominate on liability

Defendant's first argument, that different locations were affected at different times, is a red herring; Defendant has the records—as it has demonstrated—to validate who dined where and when. That one person dined in Waco, Texas, on April 1, 2018 (*i.e.*, outside of the affected timeframe for that restaurant) means that person is not within the classes sought for certification. Defendant has the records to satisfy ascertainability and identify who is and who is not a class member, and this inquiry is neither individualized nor burdensome. Instead, this inquiry is routine, objective, and well within the feasible framework contemplated under Rule 23.

Defendant's second argument, that the contracts at issue are oral, rather than written, Opp. at 23, is a flagrant attempt to reframe this case into something it is not; Plaintiffs allege the contracts were *implied* contract, *not oral* contracts. *Implied* in the contracts at issue is whether Defendant would employ adequate data security to protect Plaintiffs' and Class Members' payment card data from unauthorized access, and whether Defendant timely notified Plaintiffs and Class Member so as to permit them to take steps to mitigate the damages caused by Defendant. This inquiry is true and consistent of each and every transaction at issue in this case. Common questions need only predominate; they need not be dispositive of the litigation." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 694 (S.D. Fla. 2004) (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)). Whether an issue—such as Defendant's liability via its lax data

5

security—predominates is determined "after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Id.* (citations omitted). The predominance test is therefore met "when there exists generalized evidence which proves or disproves *an element on a simultaneous, class-wide basis*, since such proof obviates the need to examine each class member's individual position." *Id.* (citing *In re Potash*, 159 F.R.D. at 693). Simply put: the determination of whether Defendant's data security was sufficient to protect Plaintiffs' and Class Members' payment card data is the crux of this case, and of utmost value to resolution of liability, and therefore predominance has been exceedingly met.

### 2. Common issues predominate on causation

The Data Breach, caused by Brinker's deficient data security measures, is the common cause of injury for the entire Class. Brinker attempts to claim Plaintiffs cannot show the Data Breach was the "common cause of injury" because other, hypothetical causes may exist. This argument must be rejected because it is not supported by any casual standard. In negligence actions, the appropriate standard is "more likely than not," meaning that the defendant's negligence "probably caused" the plaintiff's injury, *Aycock v. R.K. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014) (quoting *Cox v. St. Joseph's Hosp.*, 71 So.3d 795 (Fla.2011)). Further, to the extent certain, marginal damages may be due to a cause other than the Data Breach, those damages would not upset Brinker's liability, but would affect only the measure of damages. *See Southern Independent Bank v. Fred's, Inc.,* No. 2:15-cv-79-WKW9, 2019 WL 1179396, at *19 (M.D. Ala. Mar. 13, 2019)("At the outset, the court agrees with Plaintiff that Defendant's causation arguments are really damages arguments. Defendant does not seriously contend that the Fred's breach did not cause the putative class *any* damages: the big question is *how much*

6

damages a jury can attribute to the breach."). Thus, common proof may also resolve causation here.

### 3. Plaintiffs Presented a Reliable Methodology for Awarding Compensable Damages on a Classwide Basis

Brinker attempts to defeat class certification by conflating liability with damages. Brinker's arguments confuse the *fact of injury* with the *measure of damages*. All that is necessary to establish Brinker's liability is to show classwide injury in fact. Brinker's arguments mirror those that were raised by the defendant in restaurant data breach case brought by financial institutions involving similar circumstances as the Brinker Data Breach. *See In re Sonic Corp. Customer Data Breach Litig.*, No. 1:17-MD-02807-JSG, 2020 WL 6701992 (N.D. Ohio Nov. 13, 2020). There the defendants raised arguments that predominance would be defeated by a need to present individual evidence of injury, and specifically that the "card at issue was compromised in the Sonic breach." *Id*. at *6. Agreeing with the plaintiffs and granting class certification, the court found that defendants arguments raised "issues of damages, not liability" and that predominance was met because "the claim that connects the class is that Defendants failed to meet their duty to prevent the cards' exposure, not fraud." *Id*.

Predominance is further satisfied, here, because Plaintiffs present reliable methodologies for later calculating those damages on a class-wide basis. Brinker's attacks to the methodologies for calculating class-wide damages offered by Plaintiffs' expert, Dan Korczyk, will fail.

"In assessing whether to certify a class, the Court's inquiry is limited to whether or not the proposed methods [for computing damages] are so insubstantial as to amount to no method at all. . . . [Plaintiffs] need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis." *Klay v. Hermana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004, quoting *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 698 (S.D. Fla.

7

2004) (quotation marks omitted). Korczyk presents damages of the type suffered by all Class Members and shows how just about every type can be calculated on a class-wide basis simply and reliably through the use of widely accepted economic principles, including the market approach and the use of averages.[4]

Brinker argues a need for individual damage inquiries where there is none.[5] First, there is no need to know whether cardholder data was actually posted to the dark web. The key issue is the value of what was stolen, and here, the value can be derived from the underground market where such illegally obtained information is sold and purchased. Second, there is no need to consider whether a Class Member is employed in considering the value of their lost time. Korczyk's methodology acknowledges that a person's time has value regardless of whether they lost income to perform tasks dealing with the data breach and whether that person is employed. Using the market value for the administrative nature of these tasks provides a class-wide methodology independent of a person's job title or employment status and fairly compensates Class Members for the value of time spent dealing with the Breach. Third, there is no need to inquire as to individual card cancellations because Korczyk's methodology is based on the uniform, reduced shelf life of stolen payment cards. Fourth, there is no need to inquire about actual lost rewards program points because the overwhelming majority (80%) of cardholders hold rewards cards and losing the use of a preferred card justifies the very modest award rate for these loses (approximately $2). Lastly, Korczyk suggests that out-of-pocket costs be awarded only to Class Members who have suffered those damages, which is a claims process approved in numerous other class action cases. See, e.g., *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS

---

[4] Dkt. No. 132-1.
[55] Arguments more fully rebutting Brinker's claimed need for individualized damages inquiries will be borne out by the briefing related to Brinker's Motion to Exclude Expert Opinions and Testimony of Daniel J. Korczyk. Dkt. Nos. 142, 145.

129939 (N.D. Cal. July 22, 2020), *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 7841 (N.D. Ga. Jan. 13, 2020). In any event, minimal, individual class member inquiries related to out-of-pocket damages do not defeat class certification. "[N]umerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004); see also *Klay*, 382 F.3d at 1259; *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages…'").

Moreover, nominal damages are appropriate where liability is proven, but there is no actual, provable injury. *Tampa Port Auth. v. M/V Duchess*, 65 F. Supp. 2d 1305, 1307 (M.D. Fla. 1998), *aff'd*, 184 F.3d 822 (11th Cir. 1999). In fact, Florida law "*require[s]* an award of at least nominal damages if a breach of contract has been established" even if no damage is proved. *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1418 (11th Cir. 2011)(emphasis added). This means that, at a minimum, nominal damages would be the appropriate measure of damages for each class member if Plaintiffs successfully prove their breach of implied contract claim at trial.

### E. Certification Pursuant to Rule 23(c)(4) is Permissible in the Alternative

The Eleventh Circuit recognizes that "even a single common question" makes certification appropriate. *Carriulo v. GM Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). Although Plaintiffs foresee no need to separate damages from liability, certification of certain issues—such as a liability-only class—can be achieved under Rule

9

23(c)(4), and is a practice recognized by the Eleventh Circuit. *Carriuolo*, 823 F.3d at 988 (quoting *Butler*, 727 F.3d at 801)[6]; *Brown*, 817 F.3d at 1239 (recognizing the many different ways to calculate individual damages, if necessary, do not require denial of class certification).

The purpose of Fed. R. Civ. P. 23(c)(4) is to resolve material issues so as to "materially advance disposition of the litigation as a whole." *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 649 (M.D. Fla. 2001). Rule 23(c)(4) is "particularly helpful in enabling courts to restructure complex cases to meet the other requirements for maintaining a class action." 7B Wright & Miller § 1790, at 268. The inquiry focuses on whether "class-wide determination" of those issues would "measurably advance the litigation." *Id.*

If the Court finds the task of determining what damages class members suffered would require "mini trials" *for those damages*, then at the very least Rule 23(c)(4) permits the Court to materially and measurably advance the litigation through certification of issues for liability, while bifurcating a case into separate trials for damages, is a permissible alternative to Rule 23(b). *Navelski v. Int'l Paper Co.*, 261 F.Supp.3d 1212 (N.D. Fla. 2017).

Date: November 18, 2020

*s/ Jean Sutton Martin*
Jean Sutton Martin
**Morgan & Morgan**
**Complex Litigation Group**
2018 Eastwood Road, Suite 225
Wilmington, North Carolina 28403
Telephone: (813) 559-4908
Facsimile: (813) 222-4795
jeanmartin@ForThePeople.com

William B. Federman
**Federman & Sherwood**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120

---

[6] "[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed." *Butler v. Sears Roebuck and Co.*, 727 F.3d 796, 800 (7th Cir. 2013).

Telephone: (405) 235-1560
Facsimile:  (405) 239-2112
wbf@federmanlaw.com

Graham B. Lippsmith
**Kasdan LippSmith Weber Turner**
360 East 2nd Street, Suite 300
Los Angeles, CA 90012
Telephone: (213) 254-4800
Facsimile: (213) 254-4801
glippsmith@klwtlaw.com

*Attorneys for the Plaintiffs and
the Putative Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 18, 2020 I caused **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** to be served via the Court's CM/ECF system, which will automatically send notice of such filing to all attorneys of record.

<u>*s/Jean Sutton Martin*</u>
Jean Sutton Martin